```
                              UNITED STATES DISTRICT COURT
                              SOUTHERN DISTRICT OF FLORIDA

                              CASE NO.09-20545-CIV-GOLDBERG
                                    (06-20464-CR-COOKE)
                              MAGISTRATE JUDGE P.A. WHITE
```

ROBERTO SAAVEDRA ALVAREZ,       :

    Movant,                     :

v.                              :    <u>REPORT OF</u>
                                                           <u>MAGISTRATE JUDGE</u>
UNITED STATES OF AMERICA,       :

    Respondent.                 :
_____

Roberto Saavedra Alvarez filed a <u>pro</u> <u>se</u> motion to vacate pursuant to 28 U.S.C. §2255, attacking his conviction and sentence imposed following a jury trial in Case No. 06-20464-cr-Cooke.

This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2255 Proceedings for the United States District Courts.

For its consideration of the motion to vacate (Cv-DE#1), the Court reviewed the government's response to an order to show cause with multiple exhibits (Cv-DE#6), the movant's supplement, the government's supplemental response (DE#17), the movant's reply and the underlying criminal file. The movant's conviction and sentence were affirmed on July 7, 2008, by the Eleventh Circuit Court of Appeals, <u>United States v Alvarez</u>,284 Fed. Appx. 747 (Ca 11(Fla)2008). This motion, filed on March 4, 2009, is timely filed.

Alvarez raises the following ineffective assistance of counsel claims:

> 1. Counsel was ineffective by failing to present an entrapment defense at trial.
>
> 2. Counsel was ineffective as a result of prosecutorial misconduct.
>
> 3. Counsel was ineffective for failure to request the disclosure of evidence.
>
> 4. Counsel was ineffective for failing to file a motion to dismiss Count one of the indictment.
>
> 5. Counsel was ineffective for failing to challenge the continued seating of a juror accused by another juror at the conclusion of trial, of not answering a voir dire question honestly.

Factual and Procedural History

On July 28, 2006, Alvarez was indicted, along with co defendants Rogelio Lamar and Osvaldo Delprado, for conspiring to possess with intent to distribute five or more kilograms of a detectable amount of cocaine, in violation of 21 U.S.C. §§846 and 841, (Count 1), attempted possession with intent to distribute five or more kilograms of cocaine in violation of 21 U.S.C. §841 (a) and (b), Count 2, conspiracy to commit a Hobbs Act robbery in violation of 18 U.S.C. §1951(a) and Count 3, and attempting to commit a Hobbs act robbery, in violation of 18 U.S.C. §1951(a) and §2.(Count 4).

Before trial, co-defendant Lamar pleaded guilty to Count 1. On December 5, 2006, Alvarez and Delprado proceeded to trial, resulting in a hung jury. On February 12, 2007, Delprado pleaded guilty. On

March 6, 2007, Alvarez proceeded to a second trial. He was convicted of Count 1 of the Indictment on March 8, 2007, and acquitted on the remaining counts. He was sentenced on June 19, 2007, to 240 months imprisonment. The conviction and sentenced were affirmed by the Eleventh Circuit on August 11, 2008. United States v Alvaro, supra. A writ of certiorari to the Supreme Court was denied on November 3, 2008.

The facts in this case are as follows:[1] On June 26, 2006, officers of the Miami Dade Police Department Task Force received information from a cooperating source (CS) that an individual by the name of "Tatica" (later identified as Rogelio Lamar) would be interested in committing a home invasion robbery for narcotics. In a reverse sting operation, the CS met with Lamar and informed him that he had a cousin involved in narcotics trafficking who wanted to steal cocaine from his employer. Lamar was interested and agreed to meet with the cousin to discuss details of the job. Lamar and his associate, Alvarez, met with the CS, and an undercover Miami Dade Task Force Officer, posing as the cousin. Lamar and Alvarez agreed to rob cocaine from a supposed drug lord's son.

Alvarez contributed to the planning of the job, and informed the agents that they would be aided in the robbery by his associate, Osvaldo Del Prado. Another meeting was held with all three defendants present, and they were informed of the expected arrival of between 40 to 45 kilograms of cocaine. The defendants were offered the use of a van to stash the cocaine. A third meeting was held to finalize plans, with Alvarez again present. A short time later, Alvarez and the co-defendants were arrested.

---

[1] The facts were taken from the transcripts, the Appellate Decision, and a more detailed version can be found in the government's response..

Trial commenced on December 5, 2006. The jury was dismissed because it had remained deadlocked. A second trial began on March 6, 2007, and the petitioner was found guilty of Count 1, and acquitted of the other charges.

A Pre-sentence Investigation Report was prepared. It indicated that the defendant committed the present offense while serving a term of five years supervised release in case no. 91-706-Cr-Moore. The statutory minimum term of imprisonment for a violation of 21 U.S.C. §841(b)(1)(A) and §851 was 240 months.

A Sentencing Hearing was held before the Honorable Richard w. Goldberg on June 13, 2007. The petitioner was sentenced to 240 months, to be followed by 10 years of supervised release.

<u>Anaylsis and law</u>

There are three types of issues that a section 2255 motion cannot raise: (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) non-constitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, unless the section 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from failure to appeal. <u>Belford v. United States</u>, 975 F.2d 310 (7 Cir. 1992).

However, a claim of ineffective assistance of counsel may constitute cause for failure to previously raise the issue. <u>United States v. Breckenridge</u>, 93 F.3d 132 (4 Cir. 1996). Attorney error does not constitute cause for a procedural default unless it rises to the level of ineffective assistance of counsel under the test

4

enunciated in Strickland v. Washington, 466 U.S. 668 (1984), which is discussed in further detail, *infra*. Murray v. Carrier, 477 U.S. 478, 488 (1986).

For Alvarez to succeed on a claim of ineffective assistance of counsel, he must demonstrate that counsel's performance was deficient, and that there is a reasonable probability that, but for counsel's errors, the result would have been different, in other words that the petitioner was prejudiced as a result of counsel's performance. Strickland v Washington, 466 U.S.668 668, 694 (1984); Chandler v. United States, 218 F.3d 1305 (11th Cir. 2000)(*en banc*). The standard is the same for claims of ineffective assistance on appeal. Matire v. Wainwright, 811 F.2d 1430, 1435 (11 Cir. 1987). A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied. Id. at 697; Waters v. Thomas, 46 F.3d 1506, 1510 (11 Cir. 1995). Prejudice in the sentencing context requires a showing that the sentence was increased due to counsel's error. Glover v. United States, 531 U.S. 198, 203-204 (2001).

The Eleventh Circuit reviews an attorney's performance with deference, and looks not for "what is prudent or appropriate, but only what is constitutionally compelled." Hardwick v. Crosby, 320 F.3d 1127, 1161 (11 Cir. 2003), citing Chandler v. United States, 218 F.3d 1305, 1313 (11 Cir. 2000) (en banc)(When assessing a lawyer's performance, "Courts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment."). The court's role in reviewing ineffective assistance of counsel claims is not to "grade a lawyer's performance; instead, [the court] determine[s] only whether a lawyer's performance was

within "the wide range of professionally competent assistance." <u>Van Poyck v. Florida Dept. of Corrections</u>, 290 F.3d 1318, 1322 (11 Cir.), <u>cert. den'd</u>,___ U.S. ___, 123 S.Ct. 70 (2002), quoting, <u>Strickland v. Washington</u>, supra at 690. Review of counsel's conduct is to be highly deferential. <u>Spaziano v. Singletary</u>, 36 F.3d 1028, 1039 (11 Cir. 1994), and second-guessing of an attorney's performance is not permitted. <u>White v. Singletary</u>, 972 F.2d 1218, 1220 (11 Cir. 1992)("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); <u>Atkins v. Singletary</u>, 965 F.2d 952, 958 (11 Cir. 1992).

<u>Claim 1</u>

Alvarez claims that his attorney was ineffective for failing to raise an entrapment defense. A defendant is entitled to have instructions presented to the jury relating to a theory of defense for which there is a foundation in the evidence. <u>United States v Morris</u>, 20 F.3d 1111 (11 Cir. 1994).

Evidence of an entrapment defense has two elements 1) Governmental inducement of a crime and 2) lack of predisposition on the part of the defendant. Government inducement requires an element of persuasion or mild coercion. Evidence that an agent simply sought out or initiated contact with the defendant and proposed the illicit transaction is insufficient to entitle the defendant to an entrapment instruction. <u>United States v Ventura</u>, 936 F.3d 1228 (11 Cir. 1991). There must be some attempt by the defendant to refuse to participate in the crime or repeated efforts by the government to consummate the transaction despite the reluctance of the defendant. <u>United States v Alston</u>, 895 F.2d 1362 (11 Cir. 1990).

6

Alvarez raised the issue of entrapment on direct appeal, albeit worded as an issue of whether the District Court erred by failing to dismiss the indictment sua sponte, based upon the government's outrageous conduct in obtaining a conviction.

The Eleventh Circuit held that it has repeatedly rejected challenges to the "reverse sting" method of police investigation unless the government involvement violates "fundamental fairness, shocking to the universal cause of Justice. *Alavrez, supra* citing to *United States* v *Gianni, 678 F.2d 956 (11 Cir. 1982). The* conduct of law enforcement agents must be so outrageous that due process principles would bar the government from obtaining a conviction (the government instigates the criminal activity, provides the entire means for its execution and runs the entire operation with only meager assistance from the defendant). *United States v Puett*, *735 F.2d 1331* (11 Cir. 1984).

In this case, the Appellate Court found no merit to the movant's claim, and held as follows:

> First, Alvarez was not initially contacted by a government agent to participate in the conspiracy. Instead, Gonzalez testified that, while acting as a confidential informant, he contacted co-defendant Lamar to allegedly buy cocaine. After Gonzalez proposed a cocaine robbery to Lamar, Lamar told Gonzalez that he would contact other individuals who had experience in that area. Lamar then contacted Alvarez. Second, Alvarez voluntarily chose to participate in the plan. Gonzalez testified that Lamar told Alvarez about the planned robbery and Lamar immediately informed Gonzalez that Alvarez had agreed to participate. Third, Alvarez had no contact with the government until he had already informed Lamar that he wished to participate. Fourth, Alvarez recruited another individual (Delprado) into the scheme. Finally, the government did not induce Alvarez into participating in the scheme, but offered a vehicle after Alvarez had already agreed to participate. <u>U.S.v Alvarez</u>, <u>supra</u> at 750.

Alvarez was a more than willing participant. He took part in the initial planning meeting, as well as the meeting to finalize the negotiations. He showed no reluctance to participate, nor did he attempt to back out of the plan.

Furthermore, as stated by the Appellate Court, and supported by the evidence presented at trial, the initial contact made by the government was with co-defendant Lamar, and it was Lamar who recruited the movant. A defendant cannot avail himself of an entrapment defense unless the initiator of his criminal activity is acting as an agent of the government); United States v Mers, 701 F.2d 1321, 1340 (11 Cir. 1983).

Lastly, the movant's actions demonstrated that he was ready, willing and able to carry out the planned actions. Predisposition to commit the crime may be demonstrated simply by a ready commission of the charged crime. United States v Brown, 43 F.3d 618, 625 (11 Cir. 1995).[2]

The petitioner has failed to demonstrate that he was prejudiced by counsel's performance. Strickland, supra. After receiving all transcripts of petitioner's conversations with the confidential informant and Lamar, the jury found sufficient evidence to convict

---

[2]In addition, although Alvarez claimed that he had no previous experience or connection with such crimes as conspiracy to possess with intent to distribute cocaine (petition p 3), the Court's docket reveals that he was convicted for this same offense in case No. 91-706-Cr-Moore.

8

him, and there is no evidence that the entrapment defense, if presented to the jury, would have been successful.

### Claims 2 and 3

In the petitioner's second claim he alleges that prosecutorial misconduct caused counsel to be ineffective. He claims that the prosecution suppressed exculpatory evidence, in the form of edited tape recordings of his meetings in violation of Brady, and Giglio thereby denying him a fair trial.[3] Alvarez claims in Count 3 that counsel was ineffective for not requesting the disclosure of that evidence.

This claim is without record support. The government provided all 8 cassette tapes, 6 CD-ROMS and 4 VHS tapes which was the entirety of the audio/video recordings of phone calls and meetings in connection with the investigation in its original discovery response (EX 5A), which corresponded to the entirety of the audio/video evidence presented at trial (EX 6- 1-11, 2B, 5B, 8B and 12). All phone records were turned over to the defense in the second discovery response, and all Brady/Giglio information on the confidential informant (Ex 5C), as well as transcripts corresponding to each and every recording conversation, including phone calls and

---

[3]To establish a Brady violation the movant must show that the prosecution suppressed evidence favorable or exculpatory to the defendant, that it was a material issue at trial, and had the evidence been disclosed to the defendant, there is a reasonable probability that the outcome would have been different. Brady v Maryland, 373 US 83 (1963)

A successful Giglio challenge, Giglio v US, 405 US 150 (1972), requires that the defendant establish that the prosecutor "knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony and that the falsehood was material. Thompkins v Moore, 193 F.3d 1327 (11 Cir. 1999)

meetings. (EX 5D) (Ex 6 1A-11A)[4] Allegations with no record support should be summarily dismissed. <u>Machibroda v. U.S.</u>, 368 U.S. 487 (1962)

Claim 2 is without merit, and counsel cannot be considered ineffective for failing to raise a meritless claim. <u>Matire v Wainwright</u>, <u>supra</u>.

Claim 3 is without merit as there was no further evidence to disclose.

<u>Claim 4</u>

In claim 4, Alvarez claims that counsel was ineffective for failing to rebut the charge of conspiracy to commit a "robbery" of cocaine. He alleges that there was no conspiracy between the parties to distribute cocaine or any other drug. The petitioner alleges that the plan was to break into a ware house, steal boxes of aparato, put them into a van and drive to a specific location. (Petition pp 7-8)

This argument was made by counsel multiple times during the trial. A major thrust of counsel's closing argument to the jury was that there was no meeting of the minds, and what may have been clear to the undercover agent was not clear to the defendant. (Ex 2C at 82-89.)

Obviously, this argument was unpersuasive to the jury and Alvarez was convicted. The fact that counsel's arguments were not accepted by the jury, after reviewing all the testimony, does not render his performance below a constitutional standard.

---

[4] All Exhibits are filed with government's Answer DE#6.

<u>Claim 5</u>

The petitioner claims that counsel was ineffective for failing to challenge the continued seating of a juror who was accused by another juror of not honestly answering a question posed during voir dire. Alvarez raised this claim in a supplemental motion to vacate (DE#8). The government, in response to a supplemental order to show cause, stated, although the amendment did not relate back to his initial motion, it was timely filed.

On March 7, 2007, at the conclusion of the Court's pre-deliberation instructions to the jury, the jurors were dismissed for the day with instructions to return the next morning to commence their deliberations. Juror #3 then informed the Court, that another juror, Marilynn Purdy had indicated that she was either on probation, or in trouble, but did not intend to inform the Court. The Court instructed juror #3 not to discuss this matter with anyone, and informed the parties that this issue would be entertained in the morning. (Ex 2C p 140-146)

The petitioner is mistaken that the issue was never addressed by the Court. The government's initial response to the motion to vacate (DE#6) included a transcript of the jury verdict on March 8, 2007 at 1:57 p.m. (Ex 2d) The transcripts of the morning of March 8, 2007 were never filed with the Court, and it therefore appears as if this issue was never addressed. The government has corrected this oversight, and filed the morning transcript on June 9, 2009. (DE#184)(Ex 2E)

The transcript reveals that the matter was addressed on the morning after the allegations were made by Juror #3. Purdy was questioned by the Court as to whether she had ever been accused of

a crime. She responded no. The Court then permitted each counsel the opportunity to question the juror, which they declined. The Court allowed Purdy to return to the jury panel to commence deliberations. At 1:57 pm they returned a verdict of guilty solely as to Count 1. Each juror was polled and confirmed that it was their verdict.

An attorney's actions during voir dire are considered to be matters of trial strategy, and cannot be the basis of an ineffective claim unless counsel's actions are so ill chosen as to permeate the entire trial with obvious unfairness <u>Nguyen v Reynold</u>, 131 F.3d 1340 (10 Cir. 1997). Defense counsel had initially selected Purdy, in consultation with his co-counsel and the defendant. He obviously found her declaration truthful. The jury, unanimously found the defendant guilty. The petitioner has failed to demonstrate counsel was ineffective in this instance.

<u>Conclusion</u>

Despite the movant's claims of ineffectiveness, counsel was able to obtain a not guilty verdict of three of the four counts against the defendant. As demonstrated above, the evidence against the defendant for Count 1 for which he was convicted, was overwhelming.

The movant has failed to demonstrate that his counsel's performance was ineffective, or that he suffered any prejudice from his representation. <u>Strickland</u>, <u>supra</u>.

It is therefore recommended that this motion to vacate be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Dated this 12th day of August, 2009.

_____
UNITED STATES MAGISTRATE JUDGE

cc:   Roberto Saavedra Alvarez, Pro Se
      Reg#57768-079
      FCI-Petersburg
      Petersburg, VA
      Address of record

      Russell Kooninl, AUSA
      Office of US Attorney
      Miami Office
      Address of Record